IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TINAYIA MULANENA,

*Plaintiffs*,

v.                                                Civil No.: 1:25-cv-03753-JRR

ULTA SALON, COSMETICS &
FRAGRANCE, INC.,

*Defendant*.

**MEMORANDUM OPINION**

Pending before the court is Plaintiffs' Motion to Remand (ECF No. 19, the "Motion"), Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF No. 15; the "Motion to Dismiss"), and Defendant's Motion to Consolidate (ECF No. 26).[1] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be granted and this action will be remanded to the Circuit Court for Frederick County, Maryland. Additionally, Defendant's Motion to Dismiss (ECF No. 15) and Motion to Consolidate (ECF No. 26) will be denied as moot.

I.      **BACKGROUND**

Plaintiffs Tinayia Mulanena, Alyiah Jackson-Mulanena, Christie Ledesma, Kenya Amaker, Alexandria Auffarth, Shaleice Wood, and Danielle Nelson, citizens of Maryland, initiated the underlying putative class action in the Circuit Court for Frederick County against Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta") on behalf of themselves, and others similarly situated, for false and misleading email marketing in violation of the Maryland Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COMM. LAW §§ 14-3001, *et seq.* (ECF No. 3.)

---

[1] The court has also reviewed Plaintiffs' Notice of Supplemental Authority at ECF No. 27 attaching a recent opinion out of the Western District of Washington.

MCEMA provides in relevant part:

> (b) A person may not initiate the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail that:
>
> > (1) Is from a computer in the State or is sent to an electronic mail address that the sender knows or should have known is held by a resident of the State; and
> >
> > (2) . . . (iii) Contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient.

MD. CODE ANN., COMM. LAW § 14-3002(b).[2]

Plaintiffs allege that "Defendant has initiated (or conspired to initiate) the transmission of hundreds of commercial electronic mail messages with false or misleading subject lines to Named Plaintiffs and the Class." (ECF No. 3 ¶ 25.) Specifically, Plaintiffs contend that Defendant frequently sends emails with subject lines advertising that a "free gift" is available (*see, e.g.,* ECF No. 3 ¶¶ 29–50); however, the body of the emails contain conditions that must be met in order for the email recipient to obtain the "free gift." *Id.* ¶ 28. As a result, Plaintiffs allege the advertised gift is not actually "free," rendering the email subject lines false and misleading. Plaintiffs seek an order awarding statutory damages of $500 per violation, reasonable attorneys' fees and costs, and pre-judgment and post-judgment on all sums awarded. *Id.* at p. 17.

Defendant removed the action to this court (ECF No. 1) and subsequently filed its Motion to Dismiss. Thereafter, Plaintiff filed the instant Motion premised on a lack of subject matter jurisdiction—specifically because Defendant, as the removing party with the burden to demonstrate this court's jurisdiction, contends in its Motion to Dismiss that Plaintiffs' Complaint fails to allege a concrete injury necessary to confer Article III standing. (ECF No.

---

[2] Pursuant to MCEMA, "commercial electronic mail" is defined as "electronic mail that advertises real property, goods, or services for sale or lease." MD. CODE ANN., COMM. LAW § 14-3001(b)(1).

19 at p. 3.)  In opposition, Defendant asserts that Plaintiffs mischaracterize Defendant's position as to Plaintiffs' injury allegations, and that Plaintiffs' allegations are in fact sufficient to satisfy Article III standing.  (ECF No. 22.)[3]

## II.    LEGAL STANDARDS

Under 28 U.S.C. § 1441(a), a party may remove a "civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "Under the removal statute, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant' to federal court."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1441(a)).  Removal jurisdiction raises "significant federalism concerns," *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109 (1941)), and therefore federal courts must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court."  *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 702 (D. Md. 1997) (citations omitted).

"The party seeking to remove a case to federal court has the burden of demonstrating federal jurisdiction."  *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016) (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)).  "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper."  *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  "If federal jurisdiction is doubtful, a remand is necessary."  *Id.* (quoting *Mulcahey*, 29 F.3d at 151); *see* 28 U.S.C. § 1447(c) ("If at

---

[3] Defendant also filed a Motion to Consolidate (ECF 26) this action with *Ade-Fosudo v. Ulta Salon, Cosmetics & Fragrance, Inc.*, Civil Action No. 1:25-cv-04188-JRR, another putative class action, which Defendant asserts involves overlapping claims.

any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## III.   ANALYSIS

Pursuant to 28 U.S.C. §§ 1332, 1453 Defendant premised removal of the underlying action on the basis that this court has original jurisdiction over Plaintiffs' claims.  (ECF No. 1 ¶ 10.)  Section 1332 provides: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[,]" also known as "diversity jurisdiction."  28 U.S.C. § 1332(a)(1).  Defendants also assert federal jurisdiction under the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446[.]").

Plaintiffs do not contest this court's original jurisdiction over their claims; rather, Plaintiffs argue this action should be remanded to state court because Defendant asserts this court "lacks subject matter jurisdiction over the allegations of the Class Action Complaint because Plaintiffs have not suffered a concrete injury."  (ECF No. 19 at p. 1.)  In other words, perhaps counterintuitively, Plaintiffs argue (as Defendant originally contended) they lack Article III standing, and, therefore, this action may not proceed in federal court.

In response, Defendant argues: (1) Plaintiffs allege concrete injuries that provide a basis for Article III standing; (2) Plaintiffs plead substantial risk of future injury that provides a basis for Article III standing; (3) Plaintiffs mischaracterize Defendant's position as to their injuries; and (4) alternatively, the court should deny Plaintiffs' Motion because remand would be futile. (ECF No. 22 at pp. 7–25.)

### A.  Standing

By way of background, the Constitution extends the judicial power of Article III courts to "cases" or "controversies."  U.S. CONST. art. III, § 2, cl. 1.  The doctrine of standing, among

others, "implements" this limit. *Carney v. Adams*, 592 U.S. 53, 58 (2020). "Article III standing is 'part and parcel of the constitutional mandate that the judicial power of the United States extends only to cases and 'controversies.'" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

To establish standing:

> First, the plaintiff must have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical. Second, the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Dep't. of Educ v. Brown*, 600 U.S. 551, 561 (2023) (citations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). A concrete injury is one that is "'real,' and not 'abstract.'" *Id.* at 340. "Where the lawsuit is a putative class action, any named plaintiffs must allege that they personally have been injured. They may not rely on injuries suffered by unknown class members to confer standing." *Chambliss v. Carefirst, Inc*, 189 F. Supp. 3d 564, 569 (D. Md. 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Of particular import here, "under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021); *see also Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022) ("[P]laintiffs cannot establish a cognizable injury simply by pleading a statutory violation."). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC*, 594 U.S. at 427 (emphasis in original).

As explained by the Fourth Circuit:

> [P]laintiffs proceeding under a statutory cause of action can establish a cognizable injury by "identif[ying] a close historical or common-law analogue for their asserted injury" for which courts have "traditionally" provided a remedy.  A plaintiff who does so has standing even if the precise injury would not, absent the statute, be sufficient for Article III standing purposes.

*Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022) (internal citation omitted).[4]

"Various intangible harms can also be concrete.  Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC*, 594 U.S. at 425 (citing *Spokeo*, 578 U.S. at 340–41).  Examples of such intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

Here, Defendants first argue that Plaintiffs' alleged harms bear a close relationship to the established common-law torts of nuisance and fraud and the intangible harm of an invasion of privacy interests, particularly intrusion upon seclusion.  (ECF No. 22 at pp. 14–17.) Plaintiffs respond that nuisance, fraud, and invasion of privacy are not causes of action which bear a close relationship to the alleged harm caused by violation of MCEMA.  (ECF No. 24 at pp. 3–8.)

### 1.  *Historical and Common-Law Analogues*

First, Defendant asserts that "[c]ourts considering MCEMA-type claims have held that receiving deceptive marketing emails is closely akin to nuisance and fraud, because it invades recipients' interest in avoiding deceptive solicitations, imposes time and productivity costs, and

---

[4] Defendant cites *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244 (4th Cir. 2020), for the proposition that courts consider two key factors to determine whether an intangible harm constitutes a concrete injury: "(1) whether the alleged harm is the type the legislature sought to prevent and (2) whether the alleged harm bears a 'close relationship' to a harm traditionally actionable in English or U.S. courts."  (ECF No. 22 at p. 9.)  Accordingly, Defendant initially argues that the first factor is satisfied because the harm alleged in Plaintiffs' "Complaint is the precise type of concrete harm that the Maryland legislature sought to prevent in enacting MCEMA, it amounts to a cognizable injury-in-fact." *Id.*  As later clarified by the Supreme Court in *TransUnion LLC*, a legislature's "views may be instructive"; however, the "creation of a statutory prohibition or obligation and cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]"  594 U.S. at 426 (internal citation omitted).  Consistent with that principle, the Fourth Circuit subsequently articulated the test set forth in *Garey,* above—focusing on historical or common-law analogues to establish a cognizable injury in fact when a plaintiff proceeds under a statutory cause of action.

risks imprudent purchases." (ECF No. 22 at p. 14.)  Additionally, Defendant asserts Plaintiffs' alleged harms bear a close relationship to "historically actionable privacy torts, particularly intrusion upon seclusion, and [courts have] treat[ed] the time, attention, and distraction costs as concrete." (ECF No. 22 at p. 15.)  Intrusion upon seclusion is an example of a harm "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425; *see Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021) (providing that "[a]t common law, courts readily recognized a concrete injury arising from the tort of intrusion upon seclusion—a tort protecting against defendants who intrude into the private solitude of another.").

Defendant points to *Harbers v. Eddie Bauer, LLC*, out of the Western District of Washington, where the court held that "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).  In that case, the plaintiff filed a putative class action against the defendant in a Washington state court for sending marketing emails with false or misleading statements in violation of the Washington Commercial Electronic Mail Act ("WCEMA"). *Id.* at 1001.[5]  The defendant subsequently removed the action to federal court and the plaintiff filed a motion to remand, arguing that she intentionally did "not allege a sufficiently concrete injury-in-fact to establish Article III standing in federal court." *Id.* at 1004.  Ultimately, the court denied the motion to remand, finding that the WCEMA violations alleged by the Plaintiff were "not divorced from the harms of deceptive spam, because commercial e-mails containing false or misleading subject lines pose a risk to an individual's interest in being free from the nuisance

---

[5] Notably, the Maryland statute at issue, MCEMA, "is modeled on the Washington statute found to be constitutional [by the Washington Supreme Court], and [] the Maryland legislature relied on the Washington Supreme Court's decision when deciding whether to enact MCEMA. *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md. App. 481, 518 (2006).  The Washington statute, WCEMA, "is virtually identical" to MCEMA. *Id.* at 520; *see* WASH. REV. CODE ANN. § 19.190.010, *et seq.*

and loss of productivity" and thus, the plaintiff's claims alleged "a concrete injury-in-fact sufficient to confer Article III standing." *Id.* at 1010–1011.

Notably, at least two courts in the Eastern and Western Districts of Washington have declined to follow *Harber*, finding that "receipt of alleged misleading or false marketing email subject lines from a solicited company" does not constitute "an invasion of privacy or any similar injury to constitute a concrete harm." *Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025).[6]  As recently explained by the Eastern District of Washington:

> In *Harbers*, the Court reviewed a Ninth Circuit case to establish that the CEMA identifies a right to be free from deceptive commercial emails. *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1005 (W.D. Wash. 2019); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017). That court determined that this is a substantive right that is comparable to the Telephone CPA ("TCPA") and constitutes injury. However, this is not a fair comparison.
>
> In *Van Patten*, the statute in question prohibited transmission of spam emails and unsolicited telemarketing. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017). The Court determined that people have the right to be free from unsolicited marketing messages to ensure the right to privacy and prevent nuisance. *Id.* at 1043. The focus of this act was to protect people from receiving calls or messages that were never solicited and therefore, invading privacy. *Id.* However, that is not the case here. This is not a violation of privacy because Plaintiff welcomed Defendants' marketing emails and even wishes to continue to receive Defendants' emails. ECF No. 1-1 at 28; *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 780–81 (9th Cir. 2018) (a consumer receiving unsolicited text messages violated the TCPA alleging a concrete injury because that form of unrestricted telemarking is a form of intrusive invasion of privacy and results in a nuisance) (citing *Van Patten*, 847 F.3d at 1043). Plaintiff does not allege that these emails

---

[6] As noted by Plaintiffs, Defendant cites *Montes* in its Motion to Dismiss, prompting Plaintiffs to file the instant Motion. (ECF No. 19 at p. 3.) In its opposition, Defendant asserts it cited *Montes* in its Motion to Dismiss "not to suggest that Plaintiffs lack Article III injury, but to show that Plaintiffs: (i) fail under Rule 8 to connect their allegations to any specific injury; and (ii) fail to allege the required elements of a traditional fraud-type tort claim such that their claims would fall under the narrow CAN-SPAN preemption exception for such claims." (ECF No. 22 at p. 20.) Although the court addressed the plaintiff's claims on a 12(b)(6) motion, *Montes* does not address Rule 8 or preemption, and dismissed the plaintiff's WCEMA claims for lack of Article III standing. *Montes*, 2025 WL 3485827, *3.

were unsolicited or unwanted. They are not unsolicited messages. This is not the same right in *Van Patten*. *Van Patten*, 847 F.3d at 1043. It is not the same right that Plaintiff suggests is a substantive right and meets the requirement for concrete injury. This is receipt of alleged misleading or false marketing email subject lines from a solicited company. There is not an invasion of privacy or any similar injury to constitute a concrete harm. Regardless, the Supreme Court already made it clear that if there is no personal harm to Plaintiff, it does not meet the requirements for Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427-28 (2021). Therefore, there is not a concrete harm to confer standing.

*Id.; see also Nuri v. True Religion Apparel*, No. 2:25-cv-00690-LK, 2026 WL 864886, at *3 n. 4 (W.D. Wash. March 30, 2026) (declining to follow *Harber* and noting *Harber* was decided prior to the Supreme Court's decision in *TransUnion LLC, "*which distinguished between 'redress[ing] harms that defendants cause plaintiffs' and 'hold[ing] defendants accountable for legal infractions'—the latter of which is 'not grounds for Article III standing.'").

At least one court in this district has also found that a plaintiff in a putative class action seeking only statutory damages and attorneys' fees pursuant to MCEMA did not allege a concrete injury sufficient to satisfy Article III standing. *Asabre v. Retail Servs. & Sys., Inc.*, No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sept. 19, 2022). In that case, the court found that the plaintiff alleged no harm to herself because she "specifically and expressly state[d] that she allege[d] only a statutory violation." *Id.* The court also referenced the Fourth Circuit's opinion in *Beyond Systems*, cited by Defendant here, where the "Fourth Circuit court determined that Beyond Systems[, the plaintiff,] had claimed a harm—receiving spam e-mail, and Maryland law had created an interest in being free from such harm. *Id.* (citing *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 716 (4th Cir. 2015)). The court noted that "*Beyond Systems* was decided prior to both *Spokeo* and *TransUnion*, which 'rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *TransUnion*, 594 U.S. at 414).

9

Relying on *Harbers*, Defendant asserts the same conclusion applies here, and Plaintiffs' purported injuries resemble the harms remedied by nuisance or fraud actions, because Plaintiffs allege Ulta has inundated them with deceptive spam, and the "alleged saturation of Plaintiffs' inboxes with unwanted and deceptive emails itself 'pose[s] a risk to an individual's interest in being free from the nuisance and loss of productivity'—'even absent additional allegations of harm.'" (ECF No. 22 at p. 15, citing *Harbers*, 415 F. Supp. 3d at 1009–1010.) Attempting to distinguish this court's decision in *Asabre*, Defendant asserts that Plaintiffs do not merely plead a statutory violation of MCEMA because they allege "Ulta purportedly 'clogs [their] email inboxes with false information,' and 'violates [their] rights to be free from deceptive commercial emails.'" (ECF No. 22 at p. 22.)

Unlike the plaintiff in *Harbers*, Plaintiffs do not allege they were actually deceived by Defendant's emails. In asserting their claims for violations of MCEMA, Plaintiffs assert the emails received from Defendant "each contain subject lines with false or misleading information that had the capacity to deceive the recipient." (ECF No. 3 ¶ 104). In its Motion to Dismiss, Defendant asserts "Plaintiffs' MCEMA claims concerning Ulta's email subject lines do not involve traditional tortious theories, which would require Plaintiffs to plead materiality, scienter, deceptive intent, reliance, and injury." (ECF No. 15-1 at p. 18.) Yet here, in opposition to Plaintiff's Motion, Defendant asserts the "alleged repeated, continuing course of messaging both alleges past concrete harms (lost time, lost storage, loss of autonomy in deciding which messages to read) and posits a substantial risk of future harm for which injunctive relief would provide redress" sufficient to establish Article III standing. (ECF No. 22 at p. 4.) Defendant cannot have it both ways. As Defendant noted in its Motion to Dismiss, "the mere receipt of misleading or false subject lines in emails does not, by itself, constitute an injury." (ECF No. 15-1 at p. 22, quoting *Montes*, 2025 WL 3485827, at *3). And, as noted above, Plaintiffs allege the mere "capacity to deceive." (ECF No. 3 ¶ 104.)

Similar to the plaintiff in *Montes*, Plaintiffs here do not allege that Defendant's emails are unsolicited or unwanted. "Rather, [] Plaintiffs assert that they want to continue to receive emails from Ulta[,] they just do not want those emails to have deceptive subject lines." (ECF No. 24 at pp. 6–7.) Therefore, Plaintiffs do not allege, or seek recovery for, "invasion of privacy or any similar injury to constitute a concrete harm." *See Montes*, 2025 WL 3485827, at *3.

As there are no alleged facts to support a finding that Plaintiffs suffered a concrete injury from their receipt of Defendant's emails, Defendant cannot demonstrate that Plaintiffs have Article III standing. *See Asabre*, 2022 WL 4326536, at *2. Accordingly, Defendant fails to satisfy its burden of demonstrating the court's jurisdiction.[7]

### B. Futility

Alternatively, Defendant argues that, regardless of whether Plaintiffs have Article III standing, the court should deny Plaintiffs' Motion because "Plaintiffs' claims are pre-empted by [the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM")], and remand would therefore be futile." (ECF No. 22 at p. 23.) "A number of courts have considered and rejected" the same preemption argument. *Repperger v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-CV-00526-RLP, 2026 WL 1157157, at *3 (E.D. Wash. Apr. 28, 2026) (collecting cases).

Nonetheless, the court need not address Defendant's futility argument, because (as noted by Defendant) the Fourth Circuit has held that futility of remand to "state court does not provide an exception to the plain meaning of § 1447(c)." *Roach v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir. 1996); *see Wells v. Johnson*, 150 F.4th 289, 308 (4th Cir. 2025) (reaffirming *Roach* and finding that "there is no 'futility' exception to § 1447(c)

---

[7] The court need not address Defendant's argument that Plaintiffs plead substantial risk of future injury that provides a basis for Article III standing because "Plaintiffs seek injunctive relief by alleging an ongoing pattern of deceptive 'free gift' email campaigns spanning multiple years[.]" (ECF No. 22 at p. 18.) As noted by Plaintiffs in their reply, Plaintiffs' Complaint does not seek injunctive relief. *See* ECF No. 3 at pp. 16–17.

remands"). "The plain language of § 1447(c) gives 'no discretion to dismiss rather than remand an action' removed from state court over which the court lacks subject-matter jurisdiction." *Id.* (quoting *Int'l Primate Protection League v. Admins. of Tulane Ed. Fund,* 500 U.S. 72, 89 (1991)). "If the federal court lacks subject matter jurisdiction, it *must* remand the case." *Wells*, 150 F.4th at 308 (emphasis in original).

Defendant contends that the *Roach* court "misread" the Supreme Court's decision in *International Primate Protection League*, on which it based its holding, because the "Supreme Court did not categorically reject the futility exception to remand." (ECF No. 22 at pp. 23–24.) True or not, this court is bound by Fourth Circuit precedent. Because the court lacks subject matter jurisdiction over Plaintiffs' claims for lack of Article III standing, the court shall remand the case. *Wells*, 150 F.4th at 308.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 19) will be granted, and this action will be remanded to the Circuit Court for Frederick County, Maryland. Additionally, Defendant's Motion to Dismiss (ECF No. 15) and Motion to Consolidate (ECF No. 26) will be denied as moot.

May 4, 2026

/S/

_____
Julie R. Rubin
United States District Judge

12